The first case is Amara v. CIGNA Corporation. May it please the court. My name is Steven Bruce. This appeal is about giving full effect to the A plus B reformation that this court ordered to provide full retirement benefit relief to approximately 18,000 former CIGNA employees. Some part of the relief has already been paid, but the relief that is remaining is substantial. The losses for one of the trial witnesses, Lillian Jones, are over $45,000. The losses for named plaintiff, Annette Glantz, are over $70 per month. She's not entitled to an amount in cash, but she would be entitled to additional money. There's no doubt that the mandate of this court is to be given full effect and is to be scrupulously and fully carried out. The leading precedent on that is In re Cuder, which CIGNA does not dispute. The only thing that is not covered in In re Cuder is how previous decisions are part of the mandate. In here, we have a number of previous decisions, including one from the Supreme Court. This case is unusual in that there are decisions related to the relief from all three levels of the federal judicial system. There are three district court decisions, this court's decision, not counting the summary decision in 2009, and the Supreme Court's decision. Could I ask you to address your adversary's motion to dismiss and why your clients did not file appeals of the methodology rulings once the district court had said they'd basically finished with methodology? Yes. The Exhibit A that CIGNA attached to their motion actually shows our reason. It's on page four in footnote three that it says that plaintiffs have not asked this court for further reconsideration, but otherwise reserved their rights concerning the July 2017 and the November 2017 rulings to the extent they modify the yearly interest credits the court previously ordered. And we said, this reservation parallels the reservation in CIGNA's January 24th, 2017 motion and see docket 486-1 at two note one. And there was a typo on that, that it was actually docket 487-1. But docket 487-1 was a document that CIGNA filed after it lost on an issue involving the so-called floor interest rate in a January 2017 decision. And here's what CIGNA said. CIGNA understands that the court rejected the application of the floor interest rate for these calculations and is not challenging that aspect of the court's ruling in this motion. CIGNA reserves the right to appeal any appropriate issues, including, but not limited to those raised in this brief, at a future time. That was the understanding of both parties back in 2017, that we had already had two very lengthy stays of relief orders. The first one in 2008, and then there was another relief order in 2012. And in both those cases, the courts directed the clerk to enter a final judgment and an appeal was taken. That altogether, the length of those stays exceeded five years. The district judge was not going to take interlocutory appeals in this case. We were moving ahead to the relief and that if there were any appeals, they would come after the relief. But your client filed a notice that provided an estimate of the value of the amount of attorney's fees turned on the value of that common fund. And in that filing, you said the district court had completed its rulings on the methodology for A plus B relief, and you were moving on to attorney's fees. That was the footnote that I just read from. That's on page four of that notice, that it says that we have not asked for further reconsideration, but we are reserving our rights concerning those rulings, which meant that we were reserving the right to appeal in the same way that Cigna had reserved the right to appeal. Well, does that language transform something that would otherwise be a final order into a non-final order? It wasn't a final order. It was an interlocutory order. And as the district court later said, when we tried to raise issues, when we tried to raise issues, the court says, they haven't done anything yet. All that has been, there have been some issues on methodology, but nothing has been done yet, and that the time for us to pursue further relief was after Cigna had done something, that we had to put them to the test of seeing what they would actually do or whether they, these... This was at the July 2018 status conference? Yes. Yeah. I guess I read that conference a little, a little differently. I mean, I, the district court is saying, well, and tell me how I'm misunderstanding, but the district court is saying, well, they're going to go forward if they do what they say they're going to do, you will have an enforcement action, you may bring it. But at the same hearing, she's also reiterating, I'm finished with methodology. We're not going to revisit those methodology, methodological rulings. Well, that was, that was on both parties. That was not a statement that was directed at plaintiffs. In fact, it appears that it was directed more at Cigna. The thing was, we're going to put Cigna to the test of seeing whether it's really going to implement these interpretations of the district court's ruling that it was kind of floating or advancing, and possibly they won't. Cigna did, in fact, pull back a little bit on the early retirement benefits later on. So there was, it was not completely static, but the judge was, it was clear that when she's saying, we're not going to re-litigate methodology, she's saying, we're moving ahead to relief. We're moving ahead to implementing this and you can take your appeals later, that the district court regarded the methodology decisions as being over, but we had to do attorney's fees. It was agreed that attorney's fees had to be decided first, because that impacted the relief that would be paid. We had to do notifications to people and we had to do, before the new notifications, we had to do calculations. The district court, in fact, ordered Cigna to include our calculations in its notices, and which was an indication of where we were, and in those notices, one of which is at JA 87 in the appeal over the accounting, Cigna said this, that after listing, after setting out what the plaintiff's calculations were, Cigna said, class counsel may raise their dispute with the court after Cigna pays you the benefits described above, you will be notified if you're entitled to additional benefits at that time. So that didn't sound like we were all done with these disputes, that Cigna was acknowledging that there was a further motion to enforce proceeding that was going to happen, and now it's saying, oh, you should have filed all of your appeals back in 2017. Well, when we go back to 2017, Cigna is itself saying that it's going to reserve the right to appeal. I guess my principal question, I understand your argument that the district court's own methodology rulings, and that seems properly before us, at least as I understand it now, but I don't see how an enforcement motion, to the extent that your argument, and maybe it doesn't do this, but to the extent that your argument is that this is an opportunity to relitigate the methodology rulings, that seems to me a different matter. Because then the enforcement motion is simultaneously about this was, this is, the defendants are not properly enforcing the order that's been put in place. And by the way, we should have a different order in place. Well, the court's scheme was to move ahead with the methodology rulings. And as we showed, the methodology rulings actually span the entire length of this case. They didn't end in November, 2017. There were adjustments to the methodology by court order through 2019. The court wanted to handle those first and didn't really, we didn't really successfully handle those first because they wound up extending the whole time. The notification rulings also extended the entire period. There was no point at which there was any notice that, of a final decision for purposes of appeal, there was not even any manifestation of that. And if we had done that, we would have had the classic piecemeal appeals because we wouldn't have the interest ruling in 2017 linked up to the further interest ruling that the district court made in 2019. It was basically an extension of that first ruling. And so if we had appealed in 2017, first of all, the, I don't know how we would have appealed because the district court would not have allowed that, but if we had somehow appealed, we would have been dealing with these issues piecemeal. And that's one of the basic principles of appellate jurisdiction is we're supposed to be able to predict when we have to appeal, and there was no basis for predicting that we had to appeal then. And in fact, as I showed, both parties were saying that there would be future appeals, and it's common, you know, when you get to the final order and you the interlocutory orders that led to that merged with the final order and become part of the appeal. And here, the double reason for that is that the issues are all intertwined. They're all about CIGNA wanting to use the so-called Part B distribution date as a basis for interest rates, mortality tables, limiting early retirement benefits. That's the common thread, and the only way that this Court would have had all those issues together is through this appeal. I mean, it's very unfortunate that we had to do this appeal, you know, that we're still litigating the relief here after all the instructions that have been issued. And that's a big problem. I'm sorry. Can I just ask you, you were talking about needing predictability about when an appeal should occur. In your view, what is the event that happened that made now the time for this appeal? What was the thing that happened that made this predictable? This is the thing that has signaled the end or final order in your view. What was that event? Because the district court told us that the procedure here was to wait for the relief to start being implemented and then file this motion to enforce. And so we knew that that would be the, we knew that that step was coming, and we knew that it would be the last step in the case, that it would be the last, that it wasn't, that that wasn't even marked as a final decision. But we knew that from the judge's orders. And that was not just, that was not just the... Right, but what, when did that occur? What triggered that? What would have made, at what point would it have been, let's say, too late for you to have filed this appeal? What was the event that said, okay, this is done, now we have to appeal, they've started. What's the event that's the point of that? Was the beginning of the implementation of the relief, that that was what the district court told us, let's put them to the test. They've been notified, they've been put on notice that they have fiduciary duties, and let's put them to the test of seeing whether they're going to go through with these interpretations. And the district court had already said that if CIGNA went through with these interpretations, and it was required to pay additional benefits, that it was not going to deduct attorney's fees out of those additional benefits. It was going to pay the attorney's fees on top of those benefits. So there was already a procedure set out, and at the conclusion of that procedure, we filed the notice of appeal. We'll hear from your adversary. Thank you. Thank you. Good morning, your honors, and may it please the court. My name is Claire Fitzpatrick, and I'm here on behalf of Appellee's CIGNA Corporation and CIGNA Pension Plan. You may want to pull the microphones just a little closer. There we go. Can you hear me better? All right, thank you. This case has been going on for 20 years. In 2014, we were before this court, and this court affirmed the district court's order to reform the CIGNA Pension Plan to provide benefits pursuant to an A plus B formula. The district court then spent two and a half years addressing the precise mechanics needed to calculate individual class members' benefits and the offsets for the portion paid as part of Part B. It received at least 16 substantive briefs on these issues, and it held oral argument on precisely how to do those calculations. Both parties had the opportunity to be heard. The district court thoroughly and thoughtfully considered the issues, balanced the equities, and issued a series of detailed methodological rulings that became final in 2017. In some cases, it decided for CIGNA. In many other cases, for plaintiffs. And still in other cases, it decided that the equities favored a different approach altogether. Those orders were formally added to the terms of the plan, and for years now, CIGNA has paid benefits in accordance with those methodological rulings. There are three big picture issues before you today. The first is that this court lacks appellate jurisdiction to hear plaintiff's appeal of the district court's 2019 decisions regarding their motion to enforce its judgments from 2016 and 2017. Because this is the case, you do not need to reach the second issue, which is the methodological issues that plaintiffs raised with respect to that motion to enforce, the specifics of the offset calculation. That would be the timing of the offset and the interest and mortality tables used in those offset calculations. And even if this court did have jurisdiction over those issues, the district court's holdings were not in abusive discretion. And the third issue is the second appeal that's been consolidated here today, that the district court did not abuse its discretion in denying plaintiff's fifth request for an equitable accounting, where the court had just determined that CIGNA was in compliance with its orders. If it's okay with you, I'll begin with the jurisdictional issues, because they're the threshold issue in this matter. This court lacks appellate jurisdiction over plaintiff's challenge to the decisions on the 2019 motion to enforce the judgments from 2016 and 2017 and their subsequent motion for reconsideration for two reasons. First, those 2019 decisions are not final orders pursuant to under section 1291. And second, the 2017 orders are final and needed to be appealed within 30 days of the last order's issue. With regard to the first issue, the final orders, the 2019 orders were, are not final orders. In those orders, the district court explained that it had issued its judgment in methodology rulings in 2016 and 2017, and then it reiterated the plain meaning of that relief that it had ordered. In the district court's own words, the enforcement ruling simply reexamined the methodology ruling and reiterated the conclusions made there. It considered arguments related to, quote, enforcing the methodology, actually adopted. As this court agreed in Tronox, post-judgment orders that do nothing more than interpret and enforce a final injunction are not final and appealable under section 1291. And this result makes good sense. It avoids successive appeals based simply on a party asking a court to interpret its own previous injunction. And second, a contrary ruling would render 28 U.S.C. 1292A superfluous. And finally, it supports the principle of finality of judgment. Here, the reformation has, was ordered in 2017. It was incorporated into the plan, and benefits have been paid out and the plan has been administered in accordance with those orders for just shy of three years. Your adversary points out that this, this morning, to language from both parties, that we're reserving the right to challenge these methodology rulings after the 2000, after they came out in 2016 and 17. Yeah, absolutely. And I appreciate the opportunity to address that. So, when Cigna wrote those words in 2017, it was in response to plaintiff's motion for reconsideration of portions of that 2016 order that, that was ongoing. So, there was an order in 2016, plaintiffs sought reconsideration of that. The judge issued another decision that came out early 2017. Cigna moved for clarification of that order. That was briefed, and then the plaintiffs filed a subsequent motion for reconsideration. Once that decision was issued in November 2017, all of the pending motions, including those that Cigna had, had mentioned and include that footnote in, were then resolved. And both parties agreed at that point, in, in December of 2017, that the court had completed its methodological rulings. There was nothing left to be determined. And there were no future motions or, or substantive orders into which those earlier decisions could later merge. So, your, so your view of the record is that's the break point. In December 2017, the parties move on to attorney's fees. The methodo, the methodological rulings are finished and intact. That's, that's right, Your Honor. And the Second Circuit and, and case law in general is clear that attorney's motions do not, do not stay or stop appellate jurisdiction. And that's true looking at the record in this case, where two appeals were taken while attorney's fees were still left to be decided. And it's, and it is beyond dispute that those 2017 judgments were final judgments. That's how both parties and the district court have characterized those decisions. The plaintiffs described them that way in their opening brief in this matter, and the district court characterized them that way in the enforcement rulings. And of course, as, as we both said, both parties characterized them that way in December of 2017. They also conclusively resolved all of those methodology issues. But putting that aside, in the post-judgment context, such substantive orders are appealable in their own right under Second Circuit case law. As a result, they needed to be appealed within 30 days, and they were not. And again, the finality of those orders is critical, because at that point, the terms of the court's reformation has now been incorporated into the terms of the plan. Class members have been receiving benefits and communications pursuant to those, those terms. And it would be disruptive to, to change it at this point. Because the court does not have jurisdiction, there's no need to move on to the next issues. But I'm happy to do so if the court would like me to. Could you address the, the need for an accounting? Yes, absolutely. So while this appeal was in process, plaintiffs filed another motion at the district court seeking an equitable accounting. Which would allow them to monitor the ongoing issues, the ongoing compliance of Cigna with the court's orders. This was at least their fifth request for an equitable accounting, and the court had each previous time denied that request, and the plaintiffs had not previously appealed it. The court had just found that Cigna was in compliance with its orders. Nonetheless, it still considered plaintiffs' arguments and their contentions, and reviewed Cigna's evidence and responses to, to what they contended in that motion. When that was denied, plaintiffs again sought reconsideration, and that was denied as well, and then plaintiffs appealed that matter. The court's decision in that regard was not an abuse of discretion. The district court recognized it had its, the authority to issue a post-judgment accounting, but held that the plaintiffs failed to justify such relief. And that was based on the Cigna's detailed explanations and sworn declarations, as well as submission of notices that it had sent to the class members and its previous status reports, and that it was in compliance with the court's orders. The court's refusal to grant plaintiff's motion for an accounting under those circumstances was reasonable and appropriate, and certainly was not an abuse of discretion. There's one other point I could make about the mandate, because that's something that's come up quite a bit in, in plaintiff's brief. And this is at JA 145, this is plaintiff's 2015 brief regarding their objections to, to Cigna's proposed methodology. And what plaintiffs wrote there, what plaintiffs told the district court was, what constitutes, quote, full relief, a, quote, reasonable amount of interest, and, quote, making the calculations as mathematically equivalent as possible, are committed to this court and not Cigna's sound discretion. And I would say that given that their position in 2015 after this court issued its mandate that each of these issues was within the court's jurisdiction, or the court's discretion to decide, it's, it is now too late for them to argue that somehow those issues that were previously, that were, were being discussed in 2015 and that they specifically talked about here, were actually included within the court's mandate in, in 2014. If there are no further questions, I will see the rest of my time. Thank you, Your Honors. We'll hear rebuttal. Your Honor, the, this court's ruling in 2014 had three specific instructions about the A plus B reformation, that it would provide the full value of the Part A annuity, that all of the benefits accrued under Part A would be protected, and that all of those benefits would be guaranteed and will not be at risk due to fluctuating interest rates. Those instructions alone should be sufficient to reverse Cigna's interpretations of the district court's, of, of the band-aid. And Judge Kravitz's explicit instructions about all three of these subjects make it even more certain that this, this is not the right path and, and the plaintiffs have to have the opportunity to enforce the mandate. That's what we're asking to do. And Judge Kravitz, for example, explained right, right in 2008 that this court does not believe that retirees should be prevented from enjoying the potentially substantial additional benefits for which they now qualify simply because they elected to take their Part B retirement benefits in a form available to them at that time, that the, the timing and the form of benefit elected under Part B was not to take away from the Part A benefits, and that's what Cigna has devised here. The, the other salient point is that all three of these things that Cigna devised were not in Cigna's original methodology proposal. They were all things that Cigna developed after the district court blocked off their original methods for lessening the relief, which included using this floor interest rate. After those were blocked off, Cigna flipped around and said, well, we're not going to use the later interest rates and mortality tables, we'll use things in effect at the, when the lump sum under Part B was distributed. That has nothing to do with an, an offset to a Part A annuity. It makes no sense. And it is, contradicts this court's mandate and Judge Kravitz's explicit instructions, which everyone has recognized are the most thorough authority in this case, that there has to be an opportunity for people to enforce the mandate. And what we hear now from Cigna in their briefs is that all of these decisions, including from the Supreme Court and this court, that they have absolutely no application to the interest rates that are used, to the mortality tables that are used, and to early retirement benefits. That's just the opposite of all of these decisions. And it's, it's outrageous that, that Cigna is even trying this, given, and that was where we were at one point with the district court, given that this isn't just a company doing these things. These are people who are supposed to have fiduciary duties. They can't come up with any fiduciary reason for doing any of these things. The only party that this, whose interests are being served are Cigna's. And reducing the relief to these people that were, that was earned and that we had to litigate for over two decades to secure. Thank you, Mr. Bruce. Thank you. I will take the matter under advisement. Thank you both. Very helpful.